## Daniel Smith, Esquire, *against* John Nicholson, Esquire.

Settlements of a public account entered in the books of the comptroller general and register general, create a lien on all the real estate of the debtor within the state.

A TESTATUM *fi. fa.*, issued from this court to Lycoming county, in this cause; upon which the sheriff returned, that he had levied on a tract of land, surveyed in the name of John M'Micken, on the 12th February 1798, late the property of the defendant.

John Nicholson, Esquire, the above defendant, being a debtor to the commonwealth on various accounts, one of his accounts, on which the sum of $58,429.24, was due to the commonwealth, was settled and entered in the books of the Comptroller General, on the third day of March 1796, and settled and entered in

[Smith *v.* Nicholson.]

the books of the Register General, on the eighth day of March 1796 ; but the same were not transmitted, and received no confirmation from the governor.

\* A question was stated for the opinion of the court, whether the said settlement created any lien on the real [\*7 estate of the said John Nicholson ?

The case was argued by Mr. M'Kean the attorney general in behalf of the commonwealth, and by Messrs. E. Tilghman, Rawle, and Dallas, for the creditor.

The attorney general detailed the several acts of assembly, which bore on the present question.

The first act which passed on the subject, was that establishing the comptroller general's office, and defining his jurisdiction on the 13th April 1782.  2 St. Laws, 44.  By this law no lien was created in favour of the state.

The act of 18th February 1785, (Ib. 247,) gave a trial by jury on an appeal from the settlement of accounts by the comptroller general.   By § 12, " a settlement by the comptroller gene- " ral and confirmation of the account by the Supreme Executive " Council, shall be a lien on all the real estate of any person " found indebted to the state ; and if the settlement shall be " confirmed in the Supreme Court on an appeal, interest shall " be awarded from the date of the confirmation of the said set- " tlement of account by the Supreme Executive Council."   The lien is declared to be on all the debtor's lands in the state, as if judgment had been given in favour of the commonwealth, against such person, for such debt, in the Supreme Court.

The act for giving the Supreme Court original jurisdiction in the city and county of Philadelphia, was passed on the 25th September 1786.  (Ib. 471.)

The act for the appointment of a register general for the purpose of registering the accounts of the state, passed on the 28th March 1789.  (Ib. 704) § 3.   The comptroller general is thereby enjoined, to submit all accounts which he shall thereafter adjust, to the inspection and examination of the said register general ; and their settlements and statements of public accounts shall be laid before the Supreme Executive Council, " in the " same manner, and for the same purposes," as is provided by the laws then in being as to accounts to be settled by the said comptroller general.

The supplement to the last act, passed on the 30th September 1789 (Ib. 751,) provides by the 2d section that the public accounts after · settlement and allowance by the comptroller and register general, should be laid before the Supreme Executive Council " in the manner and for the purposes mentioned in the " 3d section of the last act."

The act to enforce the due collection of the revenue of the state, passed on the 1st April 1790.  (Ib. 787.)  \*The [\*8 4th section provides, that the future public accounts shall be

first liquidated and adjusted by the register general, then transmitted to the comptroller general, who having examined and approved the same, shall transmit them to the President and Supreme Executive Council, for their final approbation, and shall then be returned to the register general. And by the 5th section, it is declared, " that all such settlements of accounts shall " have the like force and effect, and be subject to the like ap- " peal, at the instance of the party, as settlements theretofore " made by the comptroller general."

By the acts of 14th January 1791 and 13th April 1791 (1 St. Laws, 73) all the powers which were theretofore vested in the Supreme Executive Council, or in the president or vice president thereof, are directed to be exercised by the governor, until the end of next sessions.

And by the act of 21st September 1791, (Ib. 113,) the former law was extended to the 1st day of December next, and until the end of the next session of general assembly. (After two more continuances the act was made perpetual. Ib. 186, 375, 591.) But it provides " that in all cases, where accounts ex- " amined and settled by the comptroller general and register " general or either of them, have heretofore been referred to " the executive authority, to be by the said executive authority " approved and allowed, or rejected, the same shall only for the " future be referred to the governor, when the said comptroller " general and register general shall differ in opinion ; but in all " cases when they agree, only the balances due on each account " shall be certified by the said comptroller general and register " general to the governor, who shall thereupon proceed in like " manner as if the said accounts respectively had been referred " to him, according to the former laws upon the subject." It then gives the appeal as heretofore.

The act to provide for the settlement of public accounts was passed 4th April 1792. (Ib. 218.) The 1st section directs, that all public accounts (except between the United States and this state, and monies due to the state for land, and due in the loan offices of 1773 and 1785) shall be first liquidated and adjusted by the register general, and then be examined by the comptroller general, who if he shall approve the same, shall return them with his approbation to the register general ; but if he shall disapprove, he shall give his reasons in writing to the register general ; if they cannot then agree, he shall transmit the same with his objections to the governor, who after hearing the reasons of the register general, shall decide, as the nature of the case may require, &c. When the party is dissatisfied with the settlement of his accounts, or when there is reason to *suppose that justice has not been done to the state, the governor may and shall allow appeals, or cause suits to be instituted as the case may require.

The 2d section directs how the accounts shall be entered in the books, and that the papers and vouchers shall be filed in

[Smith *v.* Nicholson.]

the office of the comptroller general; and how warrants and certificates shall be issued.

By the 3d section, certificate of balances are to be reported by the register general to the legislature in the first week of each ensuing session.

By the 4th section, the comptroller general is to make out a balance sheet, &c. and on the 1st July 1792, he and the register general are to open regular books, &c.

By the 5th section, the comptroller general is vested with summary powers to compel delinquents to account and pay the public monies in their custody.

By the 6th section, the state treasurer and register general are to deliver all accounts and vouchers by them respectively settled, to the comptroller general.

The 7th section repeals so much of the act of 1st April 1790, as relates to the duty of the state treasurer, in examining and cancelling certain certificates.

And the 8th section directs, that the state treasurer shall deliver to the register general quarterly, all certificates paid in from the land office.

The 9th section prescribes the mode of election of the state treasurer annually, and that the comptroller general and register general be respectively appointed by the governor, subject to removal on the address of both houses.

By the 10th section, the register general is to exhibit to the legislature an annual statement of the finances of the commonwealth, and the state treasurer, a full and correct annual statement of his accounts.

And lastly, by the 11th section, "so much of every act of "general assembly, as is thereby altered or supplied, and no "more, is thereby repealed."

The act to provide for the settlement of the accounts of John Nicholson, late comptroller general, was passed on the 20th April 1795. 3 St. Laws, 790. It directs, that the present comptroller general shall employ two accomptants to settle his predecessor's accounts, and make report thereof to the next session.

The question then is, whether the settlements made by the comptroller and register general of the defendants, operate as a lien on his lands, generally?

That settlements by the comptroller general, when confirmed by the Supreme Executive Council, produced this effect, under *the express words of the 12th section of the act [*10 of 18th February 1785, was clear beyond all doubt. They bound all the real estate of the debtor within the state, as if a judgment had been given in the Supreme Court. And it has been determined here, in White *v.* Hamilton, that such judgments on removals, prior to the law giving to the Supreme Court original jurisdiction in the city and county of Philadelphia, were liens on all the defendant's lands within the state.

The Circuit Law of 20th March 1799, § 14, (4 St. Laws, 367,) directs prospectively, that after the last day of December term 1799, no judgments rendered, either in the Supreme or Circuit Courts, shall be a lien on real estates, excepting in the county in which such judgment shall be entered. But this law can have no offect on the point in question. The law of 28th March 1789, directs, that settlements made by the register and comptroller general, shall be laid before the Supreme Executive Council, " in the same manner and for the same purposes." And the law of the 1st April 1790, in the 5th section provides, that all such settlements " shall have the like force and effect, as " settlements theretofore made by the comptroller general."

When the new state constitution came into operation, the powers formerly vested in the Supreme Executive Council, were first devolved on the governor by an act of the 14th January 1791, for a time, which was afterwards extended by the acts of 13th April 1791 and 21st September 1791. By this last law, accounts were no longer to be referred to the governor for his approbation or rejection, except in those instances, where the comptroller general and register general should differ in opinion. The liens on the lands of public debtors are not taken away, either expressly, or by any necessary implication. The act only varies the form, but does not change the substance or effect of such settlements. If it be asked, from what period interest is to be calculated on a confirmation of the account on an appeal to the Supreme Court, the governor's approbation being no longer necessary ? The answer is ready ; from the time of the final settlement. As to certifying to the governor the balances due to individuals, it never was the official usage. The access to the offices of the comptroller and register general, was equally easy as to that of the secretary of state, for those whose interests would lead them to enquire of these liens ; and no inconveniences could result from the variation of the form of settlement.

But it will be urged on behalf of the plaintiff, that the act of 4th April 1792, is a virtual repeal of the lien, created by the act of 18th February 1785. It is answered, that it never was designed to produce this effect ; for it expressly provided by the *11th section, that so much only of former laws, as is thereby altered or supplied, is thereby repealed. The governor is only to interpose in a certain manner between the comptroller general and register general, where they cannot agree. As to other cases, their decisions where they do agree, unless in the cases of appeal, are conclusive. This law of 1792, has no negative words ; nor is it inconsistent with the act of 1785, as to the point in debate, according to the rule laid down in Foster's case. 11 Co. 63, a. 1 Ld. Ray. 160. 2 Wils. 146. The former acts continue in force, unless so far as they are altered or supplied by the latter law; and all of them made *in*

*pari materia*, must be considered together and expounded as one act.    Doug. 30.    1 Burr. 447.

The plaintiff's counsel readily agreed, that all the acts on the subject were to be taken together, in order to form a correct judgment of the intention of the legislature.    From a strict attention to their language, their meaning was to be collected.

Cases of lien are matters *stricti juris*.    They should always be clear and positive, and never rest on intendment.    Judgments and mortgages might be discovered with due diligence ; but it would not readily occur to any one to search the office of the comptroller general, for incumbrances.    Liens of this secret nature are highly inconvenient to honest creditors.    Here the lien contended for, is supposed to have been created by the state in her own favour, and should therefore be narrowly watched.

It is admitted, that the legislature may establish such a lien, and also abolish it.    It was at one time established by the law of 18th February 1795, but the confirmation of the account by the Supreme Executive Council, was an indispensable term, and prerequisite.    The lands of the debtor were not bound, unless the settlement was thus confirmed.    The act of 13th April 1782, raised no lien on a settlement.    The act of 28th March 1789, pursues the spirit and intention of the act of 1785 ; and directs, that the settlements should be laid before the Supreme Executive Council, " in the same manner and for the same pur- " poses," as is provided by former laws.    So by the act of 1st April 1790, the settlements thus confirmed, are to have the " like force and effect " as former settlements by the comp- troller general.    Under every change of the accounting de- partment, the lien is thus preserved, on a concurrence of the prerequisites.    Not so of the act of 21st September 1791, which was a mere temporary law, continuing in force, little bet- ter than six months, and made in ease of the governor.    He was a single person ; the Executive Council was composed of many ; and yet his interposition was essential, when the comp- troller and register general differed in opinion.    When they did agree, they were to certify *only the balances due on [*12 each account to the governor, who was to proceed there- on.    Nothing of that kind was done in the present instance ; and it is in vain to speak of official usage, against the clear de- cided terms of an act of the legislature.    But it is remarkable, that the expressions in the former laws, " in the same manner, " and for the same purposes,"—" the settlements to have like " force and effect," &c., are wholly dropped, and we must sup- pose intentionally.

This is still more obvious in the act of 4th April 1792, which goes into all the minutiæ of a general and comprehensive sys- tem, providing for the settlement of public accounts.    Not a syllable occurs respecting the lien, even when the summary

powers of the comptroller general to .enforce payment from delinquents are detailed.    May we not fairly infer, that some spark of the same spirit, which dictated the law of 19th April 1794 (directing the order in which the debts of deceased persons should be paid, and providing that debts due to the commonwealth should be last paid, 3 St. Laws 527, § 14) influenced the public councils, to change the former system of policy? If it was intended the lien should have effect, would it not have been preserved by express words? On the 3d April 1794, the law passed for the sale of all the vacant lands within this commonwealth, (3 St. Laws 209) and it would be unreasonable and inconvenient, that the lien on all lands should be continued against the debtors.

It is not practicable to execute the provisions of the act of 18th February 1785, when the confirmation of the settlement by the executive is taken away: For it is clear, that no day can be ascertained, from which interest can be computed, on the settlement being confirmed by the Supreme Court on appeal, unless an unwarrantable liberty is taken with the law, by a substitution of other words to suit the particular case.    If the court should even think the present to be *casus omissus*, they will not venture to supply it.

The court declared, that they saw no great difficulty in the question submitted to the court in the present case.

No doubt can be entertained, that a general lien was created, by the settlement of an account by the comptroller general, when it received the approbation of the Supreme Executive Council, under the law of 18th February 1785.    When the powers of this council became vested in the governor, by a temporary law of the 21st September 1791, the governor's approbation of the settlement was only necessary, when the comptroller and register general differed in opinion : and a provision of a similar nature was made by a permanent law of the 4th April 1792.    The necessity of the governor's decision on the settlement, *is wholly superseded, unless the comptroller general shall disapprove of the settlement by the register general.

The question is then reduced to a simple point : whether taking all the laws on the subject together, the court can say, that the provision of the lien introduced by the law of 1785, is repealed by any subsequent law?

It is agreed, that it is not repealed by express words.    Nor does the court see any such necessary implication.    It is not inconsistent with the subsequent laws, so that it may be fairly construed to be repealed, without negative words.    On the contrary, the last clause of the act of 4th April 1782, declares, that " so much of every act of general assembly, as is thereby altered or supplied, and no more, is thereby repealed."

In this view of the subject, the court are bound to decide,

that the settlement in the present instance, created a lien on all the real estate of the defendant John Nicholson within the state; and that their unanimous opinion on the abstract question submitted to them, is in favour of the commonwealth.

Referred to and approved in 4 Yeates 258.
Referred to in 10 Watts 466 as containing an abstract of most of the laws concerning the accounts of the comptroller general.